IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED
10:14 am, 6/6/13
Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re ) | |
| ) | |
| KAREN W. FORD, ) | Case No. 12-20094 |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |

**OPINION ON WELLS FARGO'S MOTION TO CONVERT
CASE TO CHAPTER 7**

On May 9, 2013, this matter came before the court for an evidentiary hearing on the Motion to Convert Case to Chapter 7 filed by Wells Fargo Bank, N.A. ("Wells Fargo"), the Joinder filed by Natasha Saypol ("Saypol") and the objection filed by the debtor, Karen W. Ford ("Ford"). At the conclusion of the hearing, the court took the matter under advisement. The court having reviewed the record, testimony and other evidence, applicable law and the arguments of the parties, is prepared to rule.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under § 157 (b)(2)(A). This motion is brought pursuant to 11 U.S.C. §1112(b).[1]

Wells Fargo contends that cause exists to convert Ford's chapter 11 bankruptcy case to a chapter 7 asserting that (1) Ford's sole purpose in filing her bankruptcy case was to prevent Wells Fargo from collecting its judgment; (2) Ford does not have any business to

---

[1] Unless otherwise noted, all statutory references are to Title 11 of the United States Code.

reorganize; (3) her status as manager of Flat Creek is her only business-related activity and as she attempted to sell Flat Creek, this business position and income source would be eliminated; (4) Ford has not filed a plan; and, (5) that she filed her bankruptcy case in bad faith and has administered it in violation of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure ("Rules").

Ms. Ford filed for chapter 11 bankruptcy protection on February 10, 2012. The history between Ford and Wells Fargo, and Ford and Saypol has evolved into highly contentious business relationships resulting in a myriad of motions and adversary proceedings in the Bankruptcy Court, along with numerous actions in state court.

The historical facts of this case have been presented numerous times. Ford and her husband, Glenn Ford (Glenn) pledged Flat Creek Capital, LLC's ("Flat Creek") asset, a mini warehouse, as collateral for their personal loan. Additionally, Ford and Glenn executed personal guaranties on loans with Wells Fargo. Prior to filing for bankruptcy protection, Ford and Wells Fargo were involved in litigation in the United States District Court for the District of Wyoming ("Wyoming District Court"). Wells Fargo initiated the action on the personal guaranties that Ford and Glenn had granted to Wells Fargo. A judgment was entered in favor of Wells Fargo and against Ford and Glenn on November 2, 2011 in the amount of $2,161,203.71. Wells Fargo filed an "Exemplification Certificate" against Ford's residence in order to create a judgment lien in the real estate records of Teton County Clerk. In this bankruptcy case, Ford filed an adversary complaint against

Page 2

Wells Fargo to avoid the preferential transfer which was created by the judgment lien. The trial is scheduled for September 11, 2013.

Ford owns seventy-five percent (75%) of the shares of Flat Creek and is its managing member. Glenn and Ethan Valenstein, each own 6.25% shares and Saypol owns the remaining 12.5% shares. Flat Creek is not a debtor in bankruptcy. Saypol brought state court actions requesting access to Flat Creek's books and information and an accounting. These matters are pending in the Ninth Judicial District Court for the State of Wyoming ("State Court"). In the State Court, Wells Fargo requested and was granted, the appointment of a receiver to administer Flat Creek's rental income. Wells Fargo, after this court determined that the automatic stay did not apply to Flat Creek, initiated foreclosure proceedings in State Court.

In this court, Saypol filed adversary proceedings, and upon the court's approval, an amended complaint, individually and derivatively on behalf of Flat Creek to determine the dischargeability of Saypol's claim against Ford and Glenn. These trials are scheduled on August 15, 2014.

Ford filed her Disclosure Statement and Chapter 11 Plan of Reorganization on May 7, 2013.

## Discussion

Wells Fargo argues that (1) there is a substantial or continuing loss to or diminution

of the estate and the absence of a reasonable likelihood of rehabilitation; (2) Ford failed to timely satisfy filing or reporting requirement established by the Bankruptcy Code and Rules; and, (3) Ford lacks good faith in filing and administering this bankruptcy case. Saypol joined Wells Fargo's motion. Wells Fargo makes the additional allegation that cause exists to convert the case as Ford failed to comply with an order of this court. Both Saypol and Wells Fargo assert that it is in the best interests of Ford's creditors that the case not be dismissed.

**Discussion**

The Bankruptcy Code provides, in relevant part:

> "[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7...for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."[2]

> "The court may not convert a case under this chapter to a case under chapter 7...if the court finds and specifically identifies unusual circumstances establishing that converting...the case is not in the best interest of creditors and the estate, and the debtor or any other party in interest establishes that –
> (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)–
>   (i) for which there exists a reasonable justification for the act or omission; and
>   (ii) that will be cured within a reasonable period of time fixed by the court."[3]

---

[2] § 1112 (b)(1).

[3] § 1112 (b)(2).

Paragraph (4), includes as "cause" to convert or dismiss:

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
(E) failure to comply with an order of the court;
(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter.[4]

As succinctly stated by the Bankruptcy Court for the Northern District of Iowa,

"The initial burden lies with the movants to establish cause for conversion of a Chapter 11 bankruptcy case to a chapter 7 case. Once "cause" has been demonstrated, the Court must convert or dismiss, unless the court specifically identifies unusual circumstances that establish that such relief is not in the best interests of creditors and the estate. Absent unusual circumstances, the court must not convert or dismiss a case if the debtor establishes that (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time, (2) the "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of a reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time."[5]

(1) <u>Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation</u>

Section 1112(b)(1) provides that a bankruptcy court may convert a case when there is continuing loss to or diminution of the estate and absence of reasonable likelihood of rehabilitation. This has two components: (1) the court tests whether, after the commencement of the case, the debtor continues to experience a negative cash flow, or alternatively, declining asset values; and, (2) the court tests whether

---

[4] § 1112 (b)(4).

[5] *In re Miell*, 419 B.R. 357 (Bankr. N.D. Iowa, 2009).

Page 5

there is any reasonable likelihood that the debtor, or some other party will be able to stem the debtor's losses and place the debtor's business enterprise back on a solid financial footing within a reasonable amount of time.[6]

Declining asset value

Under §541, all property of the bankruptcy estate is determined as of the time the bankruptcy is filed. At the time Ford filed her bankruptcy petition she had assets valued in the amount of $2,712,635.10 and scheduled liabilities in the amounts of (a) secured claims: $1,238,862.20; (b) priority claims: $7,377.18; and (c) unsecured claims: $2,442,128.24.

Since filing, Ford sold her Jackson residence, paid the bank its secured amount and is holding the net equity ($946,263.47) in a joint account with Wells Fargo pending resolution of the adversary proceeding. Ford scheduled her interest in Flat Creek Capital, LLC on Schedule B in the amount of $581,000.00. Although the sale never closed, due to considerations other than value, Ford contingently accepted an offer of approximately 1.7 million in December 2012 for the sale of Flat Creek's asset, the mini warehouse. However, the potential increase of the value of Flat Creek is speculative as the sale was not completed, nor was there testimony regarding whether the increase in Flat Creek's value upon a sale translated into an increase in the share values which Ford owns.

---

[6] *In re Bartmann*, BAP no. 03-078, 2004 Bankr. LEXIS 620 (10th Cir. BAP, May 10, 2004).

On May 3, 2013, the Ninth Judicial District Court for the State of Wyoming entered a Decree of Foreclosure allowing Wells Fargo to foreclose its security interest in Flat Creek.[7] This court is unaware of the status of this foreclosure at this time. However, if Flat Creek's asset, the mini-warehouse is foreclosed upon, Ford's monthly income from the management of the warehouse would ceased. Also, the income producing asset for Flat Creek would be gone, which potentially would affect the value of the shares Ford owns. All of this is speculative. It is difficult for the court to determine that Ford's assets have declined in value.

Negative cash flow

Wells Fargo argues that based upon Ford's own financial information, her estate is diminishing as her administrative expenses exceed her cash flow. The court's review of Ford's monthly operating reports from February 2012 through March 2013 show her income is derived from Social Security (14 months for a total of $21,063.10), Flat Creek management fees (13 months for a total of $35,000.00), sporadic Flat Creek loan interest payments (six payments for a total of $15,120.14); IRA withdrawals (two in a total amount of $24,000.00); and two Flat Creek distributions (in the total amount of $10,500.00).

Upon Ford's encouragement, the court reviewed the pending Disclosure Statement and proposed Plan of Reorganization. Ford concedes that the

---

[7] The Wyoming District Court entered its Order Denying Motion for Stay Pending Appeal on May 7, 2013.

management fee from Flat Creek will cease as a receiver was appointed. This results in a decrease of Ford's income by $2,500.00 per month after March 2013.

As disclosed on Ford's monthly operating reports, Ford's monthly expenses from February 2012 through March 2013 were:

```
February 2012  . . . . . . . . . . . . . . . . . . . $5,472.94
March 2012                                           $7,594.44
April 2012  . . . . . . . . . . . . . . . . . . . . $24,639.21
May 2012  . . . . . . . . . . . . . . . . . . . . .  $2,668.48
June 2012  . . . . . . . . . . . . . . . . . . . . . $7,197.00
July 2012  . . . . . . . . . . . . . . . . . . . . . $2,795.08
August 2012 . . . . . . . . . . . . . . . . . . . . .$7101.00
September 2012  . . . . . . . . . . . . . . . . . . .$9,664.00
October 2012  . . . . . . . . . . . . . . . . . . . .$5,983.93
November 2012  . . . . . . . . . . . . . . . . . . . $3,500.39
December 2012  . . . . . . . . . . . . . . . . . . . $8,994.56
January 2013  . . . . . . . . . . . . . . . . . . . .$6,177.20
February 2013  . . . . . . . . . . . . . . . . . . . $5,775.46
March 2013  . . . . . . . . . . . . . . . . . . . . .$9,395.72
```

Reviewing the first fourteen months of Ford's income and expenses, six of the months resulted in negative cash flow. Three of the months with negative cash flow were within the last four months, specifically, December 2012, February 2013, and March 2013.

The court's review of the descriptions for Ford's expenses include, but are not limited to: fees for recreation, payments for her adult children's expenses, numerous expenses for "books." The court is aware that two days prior to this hearing, Ford filed her disclosure statement and plan, urging the court to review and consider the disclosure statement and plan while determining this motion. In conclusion, it appears to the court that Ford is experiencing negative cash flow since filing, more so in the most recent months.

Page 8

The second part of the test is whether there is any reasonable likelihood that the debtor, or some other party will be able to stem the debtor's losses and place the debtor's business enterprise back on a solid financial footing within a reasonable amount of time. At this time, one of Ford's assets, her shares in Flat Creek, are in litigation with both Wells Fargo and Saypol.

Ms. Ford is retired. As stated previously, her income is derived from social security, IRA account withdrawals; interest payments, distributions and management fees relating to Flat Creek. Her business enterprise is related to the stability of Flat Creek and is affected upon (1) the foreclosure of Flat Creek's asset; (2) the effect of the foreclosure on the value of the shares owned by Ford; and, (3) the results of the Saypol adversary proceedings. The Saypol trials are scheduled in August 2014. The court finds that the debtor will not be able to stem her losses and place her retention of management fees; interest income and the dischargeability of Saypol's claims within a reasonable amount of time.

The court finds that cause has been established to convert Ford's case to a chapter 7 as there is a continuing loss to or diminution of the estate and absence of reasonable likelihood of rehabilitation.

2) <u>Failure to satisfy timely any filing or reporting requirement established by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure</u>

The court's review of the monthly financial reports shows that the reports were generally timely filed. Additionally, under Rule 2015.3(b), Ford is required to file "periodic financial reports of the value, operations, and profitability of each entity in which the estate holds a substantial or controlling interest. An entity of which the estate controls

or owns at least a 20 percent interest, shall be presumed to be an entity in which the estate has a substantial or controlling interest." Based upon the above, Ford holds a substantial or controlling interest in Flat Creek as she owns 75% of its shares and has testified that as the majority shareholder she has authority to make decisions regarding Flat Creek's operations. Ms. Ford filed the first report on March 1, 2012. The next report was filed on April 18, 2013, after Wells Fargo raised the issue of Ford's failure to file the report. Ms. Ford admitted that the report was untimely filed.

The Bankruptcy Court for the District of Colorado found that the reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and serve as a test for the debtor's ability to reorganize. Non-compliance in filing the reports is "not a mere technicality." " Habitual non-compliance calls in to question a debtor's ability to effectively reorganize."[8]

In the case before this court, Ford's one-time failure to file the report required under Rule 2015.3 does not reflect habitual non-compliance. Wells Fargo has failed to meet its burden that Ford's failure to timely satisfy filing or reporting requirement established by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

(3)  <u>Failure to comply with an order of this court</u>

Wells Fargo asserts that Ford failed to comply with this court's order entered on January 16, 2013. Wells Fargo argues that this court ruled that Ford's loan to Flat Creek was set-off pre-petition. Thereafter, Ford, as manager of Flat Creek, paid herself a payment

---

[8] *Whetten* at 383.

Page 10

in the amount of $5,000.00 as an interest payment on that loan. Wells Fargo argues that those acts of paying herself is a violation of the court's Order and Opinion on Motion for Order to Show Cause and/or for Contempt Citation. This court disagrees.

The Tenth Circuit Bankruptcy Appellate Panel, in *In re Bartmann,* held that debtors transferred funds in violation of a court order as grounds for converting their chapter 11 case to a chapter 7.[9] The debtors were ordered to not transfer or liquidate any of their non-exempt assets. In the case before this court, no such order has been entered. Wells Fargo failed to carry its burden proving that Ford violated a court order, as grounds for conversion of her bankruptcy case.

(4) <u>Lack of good faith in filing and administering this bankruptcy case</u>

As a general rule, the movant bears the burden of proving by a preponderance of the evidence that cause exists for the dismissal or conversion of a debtor's bankruptcy case. However, when lack of good faith is raised, the debtor bears the burden of proving that the filing was made in good faith.[10]

To convert or dismiss on the basis of lack of good faith, the court should consider, amoung other things, (1) the timing of the filing of the petition, (2) the motive of the debtor in filing the petition; and (3) the accuracies or inaccuracies of the debtor's assertions in its

---

[9] *In re Bartmann,* BAP No. 03-078, 2004 Bankr. LEXIS 620 (10th Cir. BAP, May 10, 2004).

[10] *In re Fox,* 232 B.R. 229 (Bankr. D. Kan. 1999).

Page 11

petition and schedules.[11] The Kansas Bankruptcy Court stated, "The bankruptcy court's power to dismiss for want of good faith in filing, while essential to proper administration of Bankruptcy Code policies and implicit in the statute itself, is obviously one to be exercised with great care and caution."[12] A debtor's bad faith in filing a petition can constitute "cause" for dismissal under § 1112(b), although it is not an enumerated ground. Courts have overwhelmingly held that proof of such an allegation may be "cause."[13]

In determining whether a chapter 11 petition was filed in bad faith, court considers the totality of the circumstances and any conceivable list of non-exclusive factors. No single factor is determinative and does not create a per-se test. The weight given to each factor varies with the facts and circumstances of the case. The following factors have been considered by the courts:

"(1) Whether the petition serves a valid bankruptcy purpose such as preserving an ongoing concern or maximizing the value of the debtor's estate;

(2) whether the petition is merely to obtain a tactical litigation advantage;

(3) whether the debtor's financial problems involve essentially a dispute between the debtor and secured creditors that can be resolved in the pending state court litigation;

(4) whether it is a single asset case;

(5) whether there are one or a very few unsecured creditors;

---

[11] *Id.* at 235.

[12] *Id.* at 236.

[13] *In re Picacho Hills Utility Company, Inc.*, Case. No. 11-13-10742, 2013 Bankr. LEXIS 1733, (Bankr. D.N.M., Apr. 26, 2013).

(6) whether there is no ongoing business or employees;

(7) whether the pre-petition conduct of the debtor was improper; and

(8) whether the case is filed to evade one or more court orders."[14]

In Ford's bankruptcy, the court finds that the debtor's financial problems stem from the dispute between Ford and Wells Fargo. Ford admits that Wells Fargo's judgment, award in the Wyoming District Court and Wells Fargo's collection efforts on that judgment were the precipitating factors for filing her Chapter 11 petition. The pending adversary proceedings between (1) Ford and Wells Fargo; and, (2) Saypol versus Ford, involves preserving Flat Creek, an asset that Ford owns 75% of the shares.

Ford has other non-exempt assets: (1) membership share in Fish Creek, and (2) and the net equity from the sale of her Jackson residence. She testified that she signed a quitclaim deed to transfer Fish Creek's assets to Wells Fargo (without its consent or knowledge at the time) to resolve the dispute regarding that property.

The court's review of the claim docket reflects that Ford's creditors include:

(1) Wells Fargo filed an amended claim in the amount of $2,296.055.49, asserting that $955,263.29 as secured;

(2) Saypol filed an amended claim in the amount of $1,021,000.00 based upon the resolution of the pending litigation;

(3) Retail Collection filed a secured claim in the amount of $588,186.29 based upon the note and mortgage for Ford's Arizona residence;

(4) American Express filed two unsecured claims in the amounts totaling approximately $40,000.00;

---

[14] *Id.* at 34.

(5)   Maricopa County filed a secured claim in the amount of $5,891.76; and,

(6)   The Internal Revenue Service filed an unsecured priority claim in the amount of nearly $25,000.00.

Based upon its review the court finds that there are very few unsecured creditors, although the claim amounts are potentially substantial.

Ms. Ford is retired. Her on-going business interest involves the management of Flat Creek. She or her husband, Glenn, managed the mini-warehouse until the receiver was appointed by the State Court. Flat Creek's asset, the mini-warehouse is currently involved in foreclosure proceedings. As previously stated, Ford admits that the reason she filed for bankruptcy protection was to circumvent Wells Fargo's collection efforts on its state court judgment. Based upon the totality of the circumstances and the factors discussed above, the court finds that Ford lacked good faith in filing her bankruptcy petition.

The Bankruptcy Code requires that the court convert or dismiss a case if cause is proven, unless the court specifically identifies unusual circumstances establishing that it is not in the creditors' best interest. The Code does not define "unusual circumstances." The Bankruptcy Court for the District of Colorado found that the term "contemplates conditions that are not common in Chapter 11 cases[15]. The adversary proceeding between Ford and Wells Fargo is a preferential transfer action that is not uncommon in bankruptcy cases. The Ford and Saypol adversary proceeding is a complaint to determine the dischargeability of

---

[15] *In re Whetten*, 473 B.R. 380 (Bankr. D. Colo. 2012).

Page 14

debt. This adversary is also not uncommon. Therefore unusual circumstances do not exist as an exception for the conversion of this case.

In the absence of unusual circumstances, the court must not convert or dismiss a case if the debtor establishes that (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time, (2) the "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of a reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time.

Ford filed her plan of reorganization two days prior to the hearing on this motion. This was 15 months after Ford filed her bankruptcy petition. At her hearing, Ford encouraged the court to review the proposed plan and determine that there was a reasonable likelihood of rehabilitation. The court reviewed the proposed plan and finds that it is just summarizes the case as it stands. Ford proposes to pay Wells Fargo from the net proceeds it retains and contingent upon the disposition of its adversary proceeding. Additionally, Ford proposes to pay Saypol, based upon the disposition of those proceedings. Considering that Wells Fargo is pursuing its foreclosure of the basis of Ford's income (Flat Creek's asset), the court does not see that there is a reasonable likelihood of rehabilitation. Additionally, this court has found that cause exists based upon lack of good faith in filing this petition. These are grounds other than the continuing loss or diminution of the estate

coupled with a lack of a reasonable likelihood of rehabilitation. The court finds that the exceptions to conversion are not applicable.

In conclusion, the court finds that movant, Wells Fargo, met its burden proving that Ford lacked good faith when filing her bankruptcy petition as cause to convert the case to a chapter 7. The court finds that the exceptions do not apply. The court also finds, upon a review of the assets of the estate, that it is in the creditors' best interest to convert this chapter 11 to a chapter 7 bankruptcy case and allow a chapter 7 trustee to independently investigate and purse the estate's assets.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 5 day of June, 2013.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
James Belcher
Stephen Winship
Christopher Bryan
John Coppede